[Civ. No. 3847.   Fourth Dist.   Dec. 16, 1948.]

C. H. PIERCE, Plaintiff and Appellant, v. VERNON NUSSBAUM, Defendant and Appellant.

William H. Brawner for Plaintiff and Appellant.

Barger & Irell, Clinton F. Seccombe and Richard S. Brawerman for Defendant and Appellant.

GRIFFIN, J.—Plaintiff and appellant brought this action for $13,330.60, based upon three separate counts for a claimed balance due for leveling and grading certain land consisting of 200 acres near Indio which belonged to defendant and respondent Nussbaum.

The first count is based upon a certain pleaded contract. The second and third counts are based upon the reasonable value of services performed and upon an account stated. The written contract, dated August 9, 1945, consists of a letter written by plaintiff to defendant and signed by both parties. It provides as follows:

"This will confirm our verbal agreement, terms of which we quote herewith:

"C. H. Pierce shall proceed with engineering work, establishing grades as per specifications supplied by yourself or agent on that portion of land described as S ½ and SE ¼ of NE¼ Sec. 27, T6S-R7E. This work shall be paid for by you at the rate of $3.00 per acre and shall not exceed the sum of $600.00, regardless of the time necessary to bring the tract to finished grade.

"C. H. Pierce shall provide necessary equipment and operators and proceed in a diligent and workmanlike manner to complete clearing and grading said tract to your specifications. It is understood and agreed that the rates paid by yourself for fully operated equipment supplied and operated by C. H. Pierce shall be as follows:

| "Equipment | Per Hour |
|---|---|
| D-8 Cat & Scraper | $10.80 |
| D-8 Cat Dozer & Rooter | 9.17 |
| 30-Cat with Float and/or Disc and/or rake | 5.50 |

"It is further understood and agreed that payment shall be made to C. H. Pierce as follows:

"75% of the cost of time hours worked, to be paid every two weeks until work is completed, at which time, when grades have been checked by instrument, with yourself or agent present, balance shall be paid in full. Records will be kept by C. H. Pierce and submitted at the end of every two weeks, showing actual operating time of equipment.

"For any hand labor which may be decided by yourself and C. H. Pierce to be necessary for removal of roots, burning, etc., such labor shall be kept under separate account and

charged to you at cost plus 10%, to be paid by you to C. H. Pierce when laborers are discharged.''

Defendant, by answer and amended cross-complaint, denied generally the allegations of the complaint and that the contract set up contained the entire agreement of the parties. He alleged that it had been supplemented and modified by a later writing limiting the agreed price for plaintiff's services to the sum of $15,000. The claimed agreement, dated October 15, 1945, is in the form of a letter directed to defendant and signed by plaintiff. It reads:

''This will confirm our verbal statement to you that, conforming to the conditions outlined in our written contractual agreement, the cost to you for grading and leveling the land ·name in said contract will not exceed the sum of Fifteen Thousand ($15,000.00) Dollars.''

By way of cross-complaint defendant seeks a recovery of $2,298.96, which sum defendant admittedly paid to plaintiff in excess of the $15,000 provided for in the letter. He likewise seeks, in another count, damages in the sum of $2,519.00, for failure of plaintiff to complete the contract. A claim is also made in another count for a recovery in the sum of $6,313.11, which defendant alleges and plaintiff admits defendant was obligated to pay to one Crow, on account of a mechanic's lien upon defendant's property by reason of plaintiff's failure to pay for the work done and equipment furnished on the job by said Crow in connection with the contract.

In the answer to the cross-complaint plaintiff admits the signing of the writing but claims it was executed and delivered without consideration and also claims that it was only an estimate of the probable cost of the work to be performed. He admits payment of $17,298.96, and admits that defendant should be allowed credit for the Crow indebtedness. Summarizing, plaintiff claimed a total of $30,629.50, on account of bills rendered to plaintiff, and admits payment or credit due defendant in the sum of $17,298.96, plus $6,313.11, or $23,612.07, and claims that there is now due and owing him the difference amounting to $7,017.43. Defendant seeks to recover the aggregate amount of $11,131.07 under his cross-complaint.

The oral testimony shows that defendant owned the 200 acres; that he previously had engaged another contractor to level the land on a cost-plus basis at an estimated cost of $14,000; that that contractor billed defendant for that amount and that the work was only half completed; that thereafter

plaintiff was called in to complete the work under the agreement here indicated. Defendant contends there was a discussion as to a guarantee by plaintiff that the work would not cost in excess of $15,000 to complete it before they entered into the original agreement. Plaintiff denies this claim and testified that the writing regarding the $15,000 price was given merely as an estimate of the cost and was not to operate as a guarantee or limitation. The evidence likewise shows that defendant had paid over $17,000 in bills and the Crow lien before he ever called plaintiff's attention to the claimed limitation in that writing. When defendant refused to pay any further bills, after the payment of the amounts above indicated, plaintiff left the job. Defendant expended $2,519 in completing the work.

There is some evidence of lack of adequate equipment employed by plaintiff and that he delayed the work to some extent; that therefore windstorms moved some of the soil around before the work was completed, and it had to be releveled. There is no contention that plaintiff's bills did not amount to $30,629.50, in the aggregate, but defendant claims that there is no proof in the evidence that that amount was "the *reasonable value*" of plaintiff's services or of the equipment and rental.

The trial court concluded that plaintiff take nothing by his complaint and that defendant take nothing from plaintiff on his cross-complaint. Judgment was entered accordingly. Both parties appealed.

■ Rather elaborate findings were made which, in effect, held that plaintiff entered into a contract to furnish engineering work and grade the land; that the contract was partly in writing and partly oral; that the writing did not contain the entire agreement of the parties; that said agreement was supplemented and modified by oral understandings and by the writing of October 15th; that "it is not true that said supplemental writing . . . was executed without consideration"; that plaintiff did not perform all of the conditions of the contract; that defendant paid $23,612.07 on said contract and that he owes no more. The court then found that there was nothing due plaintiff on the second and third counts of his complaint, "which defendant had not paid"; that defendant's liability to plaintiff was not limited to $15,000 but was limited to an amount not in excess of $23,612.07, which has been paid; that when defendant found that he had paid an excess of $2,298.96 over $15,000, defendant refused to make

further payments; that such excess payment was made under mistake of fact, but that the sum of $15,000 was not the entire sum to which plaintiff was entitled; that defendant paid $2,519 to complete the work but that no damage resulted to defendant thereby; that defendant was compelled to pay the Crow lien for $6,313.11, but that he has not been damaged in said sum.

While the full import of the findings is not entirely clear, it does appear therefrom and from the evidence and conclusions reached that the trial judge held that the writing of October 15, did not and was not intended as a guarantee of limitation of $15,000 as to the total cost of the grading and leveling; that $23,612.07 of plaintiff's $30,629.50 aggregate demand was allowed and established and was offset by payments of $17,298.96 and by a credit of $6,313.11 paid by reason of the Crow lien.

While there may have been some question as to whether there was sufficient proof of the reasonableness of plaintiff's entire claim, if said proof was necessary, there was considerable evidence as to the reasonableness of the rental charged for the machinery and equipment furnished, which items constituted the bulk of the charges. There was considerable testimony as to the intention of the parties in submitting and signing the writing of October 15. This letter was signed about two months after the work was started. It recites that ''conforming to the conditions outlined in our written contractual agreement'' the cost would not exceed $15,000. It is not shown that the parties did in fact conform to the conditions outlined in the written agreement as to whether plaintiff proceeded ''with engineering work, establishing grades as per'' certain oral specifications furnished or to be furnished by defendant, or that those specifications were not orally changed. The original agreement stated that the work was to be done in accord with defendant's specifications. What specifications those were is not described in the agreement nor is there evidence as to what they were. The specifications as to the grade to be used, whether the property was to be leveled in one or more places, the cost of leveling it in one way or another and who was to stand the cost of repairing damages to leveled lands caused by the winds, were all items of uncertainty in the original agreement and were conditions left open for future oral agreement.

While the writing of October 15 might indicate that the parties did intend to fix a limitation of $15,000 for the work

originally contemplated, it cannot be held, as a matter of law, under the circumstances here related, that plaintiff's claim for services performed and materials furnished was limited to that sum. These were matters for the trial court to determine and consider in interpreting the writing in connection with the evidence submitted. We perceive no prejudicial error.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied January 4, 1949.